# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>    PLAINTIFF, | CIVIL ACTION<br>NO. 21-1978 |
| v. | JURY DEMAND |
| AMERICAN SCREENING, LLC,<br>    DEFENDANT. | |

## COMPLAINT

### NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to provide appropriate relief to Imani Jackson ("Ms. Jackson"). As alleged with greater particularity below, the defendant, American Screening, LLC, removed Ms. Jackson, because of her race.

### JURISDICTION & VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 451, § 1331, § 1337, § 1343, and § 1345. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were committed in the State of Louisiana and, therefore, within the jurisdiction and venue of the

1

United States District Court for the Eastern District of Louisiana pursuant to Title VII, 42 U.S.C. § 2000e-5(f)(3).

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission ("Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, American Screening, LLC has continuously been a limited liability company doing business in the State of Louisiana and has continuously had at least 15 employees.

5. At all relevant times, American Screening, LLC has continuously been an employer engaged in an industry affecting commerce under Title VII, 42 U.S.C.§ 2000e(b), (g), and (h).

## ADMINISTRATIVE PROCEDURES

6. More than 30 days prior to the institution of this action, Ms. Jackson filed a charge of discrimination ("charge") with the Commission alleging violations of Title VII by American Screening, LLC.

7. On or about September 1, 2020, the Commission issued to American Screening, LLC a letter of determination ("determination") finding reasonable cause to believe that American Screening, LLC violated Title VII and inviting American Screening, LLC to join with the Commission in informal methods of conciliation to

endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8. The Commission engaged in communications with American Screening, LLC to provide the opportunity to remedy the discriminatory practices described in the determination.

9. On or about September 22, 2020, the Commission issued to American Screening, LLC a notice of conciliation failure, advising that the Commission was unable to secure from it a conciliation agreement acceptable to the Commission.

10. All conditions precedent to the institution of this action have been fulfilled.

## STATEMENT OF CLAIMS

11. Since at least August 2, 2018, American Screening, LLC has engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2(a).

    A. American Screening, LLC is a drug and medical testing supplies distributor. A staffing services provider referred Ms. Jackson to American Screening, LLC for a temporary-to-permanent sales position.

    B. On or about August 2, 2018, an owner and the human resources manager at American Screening, LLC interviewed Ms. Jackson.

    C. Ms. Jackson, who is African American, has tightly curled hair ("4-A" under the Andre Walker Hair Typing System). For the interview, Ms. Jackson wore a wig with straight hair ("1-A" or "1-B" under the Andre Walker Hair Typing System), which likely came from a person or persons

who were European or Native American. The wig was not permanent, and it took Ms. Jackson about 45 minutes to put it on each day that she wore it. To attach it, she covered her hair in a wig cap and then affixed the wig with glue. The wig was uncomfortable, especially in the heat and humidity, and time-consuming to maintain.

      D.      After the interview, American Screening, LLC selected Ms. Jackson for the position.

      E.      On August 13, 2018, Ms. Jackson began work at American Screening, LLC.

      F.      American Screening, LLC had the right to control when, where, and how Ms. Jackson performed her job at American Screening, LLC. Ms. Jackson worked at an American Screening, LLC, facility, and American Screening, LLC furnished all of the equipment, tools, and material that Ms. Jackson needed to perform her job. The senior recruiter at the staffing services provider informed Ms. Jackson that the human resources manager at American Screening, LLC would be Ms. Jackson's supervisor.

      G.      While working at American Screening, LLC, Ms. Jackson ordinarily wore dress pants, a blouse (with or without a sweater or a blazer), and dress shoes. Until mid-to-late September, Ms. Jackson also wore the wig she had worn to her interview.

      H.      In mid-to-late September, Ms. Jackson stopped wearing the wig and began wearing her own natural hair, usually in a neat bun. Other

employees also often wore their own hair in buns or in ponytails, but unlike Ms. Jackson, those employees did not have tightly curled hair.

    I.    Soon after Ms. Jackson stopped wearing the wig, on or about October 8, 2018, the owner, instructed a payroll manager and the human resources manager to "talk to [Ms. Jackson] about her hair and looking more professional," noting that Ms. Jackson "came in with beautiful hair" but now "looks like she rolls out of bed."

    J.    On or about October 9, 2018, the human resources manager informed the senior recruiter at the staffing services provider about the owner's concerns. The senior recruiter informed the human resources manager—who informed then informed the owner—that "[e]mployers can require employees to have neatly groomed hair, but such rules must respect racial differences in hair" and that "employers should make sure grooming standards are race-neutral, adopted for nondiscriminatory reasons and consistently applied." The owner asked the human resources manager: "Is [Ms. Jackson] going to fix her hair?"

    K.    On or about October 11, 2018, the owner told Ms. Jackson that her hair was unacceptable and instructed her to wear straight hair—that is, the wig—instead.

    L.    Also on or about October 11, 2018, the payroll manager and the human resources manager at American Screening, LLC told Ms. Jackson that the owner had told them to tell Ms. Jackson that her hair was unacceptable

and to instruct Ms. Jackson to wear straight hair instead. However, they also told Ms. Jackson that they thought Ms. Jackson's hair was acceptable and that the owner was acting unlawfully. They told her to find other work.

  M. On or about October 12, 2018, the owner told the payroll manager and human resources manager: "She needs neatly groomed hair[.] Some days it's sticking every which way and looks like she just rolls out of bed and comes to work."

  N. On or before October 18, 2018, the owner instructed the human resources manager to terminate Ms. Jackson. The human resources manager then informed the senior recruiter at the staffing services provider that American Screening, LLC was terminating Ms. Jackson.

  O. American Screening, LLC terminated Ms. Jackson's employment on or about October 18, 2018.

  P. On October 22, 2018, the owner told the senior recruiter at the staffing services provider that "[Ms. Jackson] was terminated not for performance" but instead "because I no longer needed her services."

  Q. On or before November 1, 2018, American Screening, LLC replaced Ms. Jackson with an employee who was not African American.

12. The effect of American Screening, LLC's unlawful employment practices complained of above has been to deprive Ms. Jackson of equal employment opportunities and otherwise adversely affect her status as an applicant or employee because of her race in violation of Title VII.

13. The unlawful employment practices complained of above were intentional.

14. American Screening, LLC acted with malice and/or reckless indifference to the federally protected rights of Ms. Jackson when it engaged in the unlawful employment practices complained of above.

PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining American Screening, LLC its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against its applicants or employees on the basis of race.

B. Order American Screening, LLC to institute and carry out policies, practices, and programs that provide equal employment opportunities for applicants and employees who are African American and that eradicate the effects of its past and present unlawful employment practices.

C. Order American Screening, LLC to make Ms. Jackson whole, by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to reinstatement and/or front pay.

  D. Order American Screening, LLC to post and keep posted the notices required by Title VII, 42 U.S.C. § 2000e-10(a).

  E. Order American Screening, LLC to make and preserve all records relevant to the determination of whether unlawful employment practices have been or are being committed, in accordance with Title VII, 42 U.S.C. § 2000e-8(c).

  F. Order American Screening, LLC to make Ms. Jackson whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including job-search and medical expenses, in amounts to be determined at trial.

  G. Order American Screening, LLC to make Ms. Jackson whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, inconvenience, and humiliation, in amounts to be determined at trial.

  H. Order American Screening, LLC to pay punitive damages for its malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

  I. Grant such further relief as the Court deems necessary and proper in the public interest.

  J. Award the Commission its costs of this action.

JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Respectfully submitted,

**Gwendolyn Young Reams**
Acting General Counsel
U.S. Equal Employment Opportunity Commission

**Christopher Lage**
Deputy General Counsel
U.S. Equal Employment Opportunity Commission

**Rudy L. Sustaita**
Regional Attorney
U.S. Equal Employment Opportunity Commission
Houston District Office
1919 Smith Street, 7th Floor
Houston, Texas 77002
Phone: (346) 327-7691
Texas Bar No. 19523560

**Gregory T. Juge**
Supervisory Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 676-8239
Louisiana Bar No. 20890

/s/ Andrew B. Kingsley
**Andrew B. Kingsley (Lead)**
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 208-8661
Louisiana Bar No. 35865

**Elizabeth J. Owen**
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2535
Louisiana Bar No. 33620

**Peter Theis**
Senior Trial Attorney
U.S. Equal Employment Opportunity Commission
New Orleans Field Office
Hale Boggs Federal Building
500 Poydras Street, Suite 809
New Orleans, LA 70130
Phone: (504) 635-2548
Louisiana Bar No. 34786

COUNSEL FOR U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**REGISTERED AGENT FOR SERVICE OF PROCESS:**

RON KILGARLIN, JR.
9742 ST VINCENT AVE., SUITE 100
SHREVEPORT, LA 71106